# Exhibit 1
# Petition



## IN THE DISTRICT COURT OF CLEVELAND COUNTY
### STATE OF OKLAHOMA

| | |
|---|---|
| **(1) BRIAN GAINES, in his individual capacity and Personal Representative of the Estate of EMILY GAINES;** | |
| **(2) DANA GAINES, in her individual capacity;** | |
| **Plaintiffs,** | |
| **v.** | **CASE NO.** 7 |
| **(1) CITY OF MOORE, a municipal corporation;** | |
| **(2) TODD STRICKLAND, in his individual capacity;** | |
| **(3) JERRY STILLINGS, in his individual capacity;** | |
| **(4) TODD GIBSON in his official capacity as Moore Police Department Police Chief;** | |
| **(5) KYLE LLOYD, in his individual capacity.** | |
| **Defendants.** | |

### PETITION

COME NOW Plaintiffs, Brian Gaines, individually and as Personal Representative of The Estate of Emily Gaines, and Dana Gaines, individually, for their causes of action against Defendants City of Moore, Todd Strickland, in his individual capacity, Jerry Stillings, in his individual capacity, Todd Gibson, in his official capacity, and Kyle Lloyd, in his individual capacity, state as follows:

1

**EXHIBIT**

**1**

**INTRODUCTION**

Plaintiffs bring this civil rights action for damages against the Defendants under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983, and a negligence claim under Oklahoma state law.

Plaintiffs claim for damages arises from Officer Lloyd's grossly negligent, reckless, improper, and unlawful violation of Emily Gaines' fundamental due process right to life by intentionally misusing a vehicle over an extended period of time, under the color of law and while in the scope and course of his employment for the Moore Police Department. Plaintiff further alleges liability on the part of current Police Chief Todd Gibson and past Police Chiefs Todd Strickland and Jerry Stillings based upon Defendants Strickland and Stilling's personal involvement in the events which caused Emily's death, along with their failure to train and supervise officers, such as Kyle Lloyd, and their failure to enforce and/or implement policies, procedures, and customs regarding law enforcement officers' use of a vehicle in non-emergent employment situations, which otherwise would have protected Emily Gaines's right to not be injured by a police officer and would have prevented her loss of life.

**THE PARTIES**

1. Emily Gaines, deceased, was, at all material times, a resident of Moore, County of Cleveland, State of Oklahoma.

2. Bryan Gaines was, at all material times, a resident of Moore, County of Cleveland, State of Oklahoma.

3. Dana Gaines was, at all material times, a resident of Moore, County of Cleveland, State of Oklahoma.

2

4.   City of Moore, Oklahoma, is a municipality and political subdivision located in Cleveland County, Oklahoma and is responsible for the operation of the Moore Police Department and its law enforcement officers. As such, Defendant City of Moore may sue or be sued by name and has the authority to employ law enforcement officers, appoint a police chief, and delegate to the police chief final policy and decision-making authority regarding law enforcement matters for the City of Moore.

5.   Defendant Jerry Stillings was, at all material times, the Chief of Police, employed by and working for the City of Moore and/or the Moore Police Department. Defendant Jerry Stillings engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of the City of Moore and/or the Moore Police Department. At the time of this incident, Defendant Stillings was the official policy-maker for City of Moore Police Department, and was personally involved in the decisions and actions which caused or contributed to Emily's death. As such, Defendant Stillings is properly named as a Defendant in his individual capacity.

6.   Defendant Todd Strickland was, at all material times, the Chief of Police, employed by and working for the City of Moore and/or the Moore Police Department. Defendant Todd Strickland engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of the City of Moore and/or the Moore Police Department. At the time of this incident, Defendant Strickland was the official policy-maker for City of Moore Police Department, and was personally involved in the decisions and actions which caused or contributed to Emily's death. As such, Defendant Strickland is properly named as a Defendant in his individual capacity.

7. Defendant Todd Gibson is currently the Chief of Police, employed by and working for the City of Moore and/or the Moore Police Department. Defendant Todd Gibson is currently the official policy-maker for the City of Moore Police Department. As such, pursuant to Fed. R. Civ. P. 25(d), Defendant Gibson is properly named as a Defendant in his official capacity.

8. Defendant Kyle Lloyd was a resident of Oklahoma City, County of Oklahoma, State of Oklahoma at all times material to this Petition.

9. Officer Lloyd was, at all material times, acting under the color of law. Officer Lloyd is named in his individual capacity.

10. Defendant Officer Lloyd was, at all material times, an employee of City of Moore/Moore Police Department, acting within the course and scope of that employment.

11. In the alternative, Officer Lloyd was acting outside the scope of his employment such that the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151(C) does not exempt Officer Lloyd from personal liability for his tortious conduct.

## JURISDICTION AND VENUE

12. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

13. This action arises from a motor vehicle wreck that occurred in Cleveland County, Oklahoma on December 14, 2019.

14. This Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

## COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. 151, *et seq.*

15. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

16. On approximately February 25, 2020, Plaintiffs served a Governmental Tort Claims Notice on the City of Moore by mailing said Notice to Vanessa Kemp, City Clerk, among other city officials.

17. On March 2, 2020, Plaintiffs served a new Governmental Tort Claims Notice on the City of Moore by mailing said Notice to Vanessa Kemp, City Clerk, among other city officials.

18. In accordance with 51 O.S. § 156, the Notice was filed with the City Clerk's Office of the City of Moore on March 3, 2020.

19. Pursuant to 51 O.S. § 157(A), Plaintiffs' claim was deemed denied no earlier than May 25, 2020.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL COUNTS

20. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

21. This action arises from Officer Lloyd's grossly negligent, reckless, improper, and unlawful violation of Emily Gaines' fundamental due process right to life by intentionally misusing a vehicle by excessively speeding and driving recklessly over an extended period of time, while acting under the color of law.

22. The foreseeable result of Officer Lloyd's deliberate conduct was a preventable motor vehicle wreck that occurred on the morning of December 14, 2019 at the intersection of South Sooner Road and SE 134th Street in Oklahoma City, OK.

5

23. At the time of this collision, Officer Lloyd resided at 5909 SE 88th, Oklahoma City Oklahoma 73135.

24. On December 14, 2019, prior to this collision, Officer Lloyd was at home.

25. On December 14, 2019, prior to this collision, the Moore Police Department began hosting their annual "Shop with a Cop" event.

26. This event is an official Moore Police Department/City of Moore community outreach program designed to further law enforcement goals through teaching children not be afraid of police officers and make the police department a part of the community with whom people feel comfortable communicating and interacting.

27. During the event, police officers have breakfast with participating children at Chick-Fil-A restaurant, located at 2001 S. Telephone Road, Moore Oklahoma 73160, before taking them shopping for holiday gifts.

28. As a part of the event, police officers drive their police department vehicles in a parade from the Chick-Fil-A restaurant, located at 2001 S. Telephone Road, Moore Oklahoma 73160, to the Target store, located at 720 SW 19th, Moore OK 73160.

29. At the Target store, the children shop for Christmas items with a cop.

30. During this parade, officers allow the children to operate the lights and sirens of the vehicles.

31. As a part of this event, City of Moore/Moore Police Department exercise their governmental police power and authority under the color of law by temporarily closing the roads along the route to allow the parade to pass.

32. On the morning of December 14, 2019, another officer of the Moore Police Department locked himself/herself out of his/her police vehicle while at Chick-Fil-A.

6

33. Officer Lloyd had in his possession another set of keys to the locked police vehicle.

34. Officer Lloyd received a phone call from an employee of the Moore Police Department sometime before 7:41am on Saturday, December 14, 2019, requesting that Officer Lloyd bring the extra keys to the locked police vehicle to the Chick-Fil-A so the other officer could unlock the locked police vehicle in order to drive that police vehicle in the "parade" to Target.

35. Upon receiving this call and as a direct result of receiving this call, Officer Lloyd left his house, located at 5909 SE 88th Street, Oklahoma City Oklahoma 73135, to drive the extra keys to Chick-Fil-A.

36. Although Officer Lloyd drove his personal vehicle, Officer Lloyd's act of taking the extra police vehicle keys to Chick-Fil-A was incident to and in furtherance of the interests of his employer, City of Moore/Moore Police Department.

37. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd understood himself to be on business related to his employment as a police officer with the City of Moore/Moore Police Department.

38. But for Officer Lloyd's official position and capacity as a police officer, Officer Lloyd would not have had the extra police vehicle keys in his possession.

39. But for Officer Lloyd's official position and capacity as a police officer, Officer Lloyd would not have been requested to bring the extra police vehicle keys to Chick-Fil-A on the morning of December 14, 2019.

40. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd believed he was acting in his capacity as a police officer for the City of Moore/Moore Police Department.

41. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd was, in fact, acting in his capacity as a police officer for the City of Moore/Moore Police Department.

42. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd believed he was acting under color of law.

43. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd was, in fact, acting under color of law.

44. From the time Officer Lloyd left his house on the morning of December 14, 2019, Officer Lloyd was jointly engaged with City of Moore/Moore Police Department in a joint activity to get the extra keys to the locked police vehicle so that the Shop with a Cop event could proceed without delay or with only minimal delay.

45. If Officer Lloyd had travelled the speed limit, the drive from Officer Lloyd's home to Chick-Fil-A would have been approximately 16 minutes.

46. If Officer Lloyd had travelled the entire trip from his home to Chick-Fil-A at twice the speed limit, he would have arrived in approximately 8-10 minutes.

47. The risk imposed by Officer Lloyd to the safety and lives of the public, including Emily Gaines, is not worth saving 6-8 minutes of drive time in order to get keys to an officer, under the circumstances presented in this case.

48. There were other Moore Police Officers present at Chick-Fil-A, who had access to their police vehicles to drive to Target.

49. The officer that locked his keys in his police vehicle, along with the child assigned to him, could have ridden in one of the numerous other police vehicles.

50. The "parade" to Target could have been delayed temporarily until Officer Lloyd arrived with the extra keys to the locked police vehicle.

51. Officer Lloyd's act of taking extra police vehicle keys to Chick-Fil-A, under the circumstances, did not constitute an emergency.

52. Taking keys to Chick-Fil-A, under the circumstances, did not require Officer Lloyd to drive his vehicle at speeds in excess of the speed limit.

53. No emergency existed on the morning of December 14, 2019 prior to 7:41 am that required Officer Lloyd to drive his vehicle at speeds in excess of the speed limit.

54. Officer Lloyd did not believe that he was responding to an emergency situation.

55. Despite the lack of emergency, Officer Lloyd made the decision to speed excessively and drive recklessly in order to get the extra keys to Chick-Fil-A so that the "parade" could proceed.

56. Taking keys to Chick-Fil-A, under the circumstances, did not constitute an emergency that would prevent Officer Lloyd from having time to make unhurried judgments before choosing to speed excessively.

57. Taking keys to Chick-Fil-A, under the circumstances, did not constitute a legitimate law enforcement goal that authorized Officer Lloyd to speed excessively.

58. At approximately 7:41am Officer Lloyd was driving his 2014 Black Dodge Charger southbound on South Sooner Road in Oklahoma City, OK approaching the intersection of South Sooner Road and SE 134th Street.

59. Officer Lloyd's vehicle was not equipped with police lights or a siren.

60. The distance between Officer Lloyd's home and the intersection of South Sooner Road and SE 134th Street is approximately 3.4 miles.

9

61. Officer Lloyd was familiar with the stretch of South Sooner Road between SE 89th St. and SE 134th St.

62. There are 2 traffic signals, not including the one at the intersection of South Sooner Road and SE 134th St. on South Sooner Road between Officer Lloyd's home and the intersection of South Sooner Road and SE 134th St.

63. There are no less than 54 private driveways or streets along South Sooner Road between Officer Lloyd's house and the intersection of South Sooner Road and SE 134th St.

64. There is also one intersection of major roads with no traffic signal on South Sooner Road, the intersection of South Sooner Road and SE 119th St.

65. From the time Officer Lloyd left his house to the time of this collision, Officer Lloyd had the chance for repeated reflection regarding the foreseeable consequences of his intentional choice to speed excessively, including causing serious injury or death to other drivers on the road.

66. From the time Officer Lloyd left his house to the time of this collision, Officer Lloyd was not engaged in a high-speed chase or in pursuit of another vehicle.

67. From the time Officer Lloyd left his house to the time of this collision, Officer Lloyd was not responding to an emergency call.

68. From the time Officer Lloyd left his house to the time of this collision, Officer Lloyd was not pursuing legitimate law enforcement goals against which Officer Lloyd had to reasonably balance his choice to speed excessively.

69. From the time Officer Lloyd left his house to the time of this collision, Officer Lloyd had the luxury of having time to make unhurried judgments regarding the risks of driving his vehicle at excessive speeds up to and including the collision that took Emily Gaines' life.

10

70. Despite having the opportunity to deliberate, Officer Lloyd drove his vehicle recklessly and at excessive speeds.

71. The intersection of South Sooner Road and SE 134th St. is just south of a large curve in South Sooner Road.

72. At the point where this large curve is located, the curve in the road obscures the vision of the intersection with SE 134th St. for cars traveling south on South Sooner Road.

73. Officer Lloyd was traveling over the posted safe speed limit of 50 miles per hour when he approached the intersection of South Sooner Road and SE 134th Street at a speed of 94 miles per hour.

74. Officer Lloyd knew he was approaching SE 134th St. while travelling over 90 miles an hour on South Sooner Road.

75. Officer Lloyd knew that his view of SE 134th St. would be obscured by the large curve on South Sooner Road.

76. Despite his knowledge of the location of the intersection with SE 134th St. and his obscured view, Officer Lloyd chose to continue driving in excess of 90 miles an hour as he approached the intersection.

77. Upon information and belief, Officer Lloyd was driving at excessive speeds all or substantially all of the way from his home to the intersection of South Sooner Road and SE 134th St.

78. While driving from his home to the intersection of South Sooner Road and SE 134th St., Officer Lloyd passed other vehicles while driving at excessive speeds.

79. That morning, Emily Gaines was on her way to take the A.C.T.

11

80. At approximately 7:41am Emily Gaines drove her 2014 Red Nissan Sentra northbound on South Sooner Road into the intersection of South Sooner Road and SE 134th on a solid green light to turn left onto SE 134th Street.

81. When Emily Gaines began her left turn Officer Lloyd was 669 feet away from the area of impact.

82. Approximately 4 seconds prior to impact with Emily Gaines' vehicle, Officer Lloyd increased his speed to 95 miles per hour.

83. Approximately 1.2 seconds prior to the impact Officer Lloyd applied his brakes while traveling 92 miles per hour.

84. Even after applying his breaks, Officer Lloyd collided with Emily Gaines's vehicle while traveling at a speed of 77 miles per hour at the time of impact.

85. Emily Gaines died on scene as a result of the injuries caused by the collision with Officer Lloyd's vehicle.

86. If Officer Lloyd had been traveling the speed limit, Emily Gaines would have cleared the intersection before Officer Lloyd entered the intersection by over 4 seconds and the collision would not have occurred.

87. Officer Lloyd intentionally entered the intersection at South Sooner Road and SE 134th St. at an unsafe speed which was reckless under the circumstances.

88. In entering the intersection at an unsafe speed, with no emergency purpose, no emergency lights, and no siren, Officer Lloyd violated numerous City of Moore/Moore Police Department policies and procedures.

89. Officer Lloyd violated state law, including but not necessarily limited to 47 O.S. § 11-801; 47 O.S. § 11-901; and 47 O.S. § 11-903.

12

90. Officer Lloyd had no emergency law enforcement objective in not following the posted speed limit, and therefore intentionally misused his position as a police officer.

91. Officer Lloyd made the deliberate, intentional, conscious, and reckless decision to drive in excess of the posted speed limit for all or substantially all of the approximately 3.4 miles between his home and the intersection of South Sooner Road and SE 134th St.

92. Officer Lloyd made the deliberate, intentional, conscious, and reckless decision to approach and enter the intersection of South Sooner Road and SE 134th St. while driving in excess of the posted speed limit.

93. Officer Lloyd's actions in speeding with no emergency law enforcement objective, made the deliberate, intentional, conscious, and reckless decision to ignore and violate numerous City of Moore/Moore Police Department policies and procedures and state and municipal laws.

94. Officer Lloyd's actions in driving recklessly and speeding without having a legitimate reason to do so was reckless, willful, deliberately indifferent to the rights and safety of other motorists, including Emily Gaines, and constituted an intentional misuse of his position as police officer.

95. As a result of entering the intersection in speeds far in excess of the posted speed limit and crashing into Emily Gaines' vehicle, killing Emily Gaines, Officer Lloyd was charged with unlawfully, willfully, knowingly and wrongfully committing manslaughter in the first degree in violation of 21 O.S. § 711.

## COUNT I: VIOLATION OF EMILY GAINES' CIVIL RIGHTS BY OFFICER LLOYD

96. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

13

97. Officer Lloyd's decision to speed while on non-emergency law enforcement business constitutes a conscience-shocking deliberate indifference to the rights of other motorists, including Emily Gaines.

98. Officer Lloyd's intentional misuse of his position as a police officer and deliberate indifference to the rights of other motorists, including Emily Gaines, under the circumstances constitutes conscience-shocking behavior as defined in *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir., 2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 140 (1998) and *Green v. Post*, 574 F.3d 1294 (10th Cir., 2009).

99. Officer Lloyd's willful failure to follow traffic laws in speeding with no emergency law enforcement purpose was a blatantly arbitrary and unjustified misuse of the powers of government.

100. In the absence of any emergency law enforcement objective, Office Lloyd's actions in intentionally speeding in violation of state law demonstrates conscious, deliberate indifference to the extreme risk of serious injury or death to citizen's in Emily Gaines's position, the motoring public.

101. Officer Lloyd's deliberate indifference to the extreme risk of serious injury or death to persons such as Emily Gaines was willful, wanton, egregious, outrageous, and shocking to the conscience, and in gross disregard of Gaines' rights guaranteed by 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102. Officer Lloyd, in exhibiting deliberate indifference to the extreme risk of very serious injury or death to other motorists by ignoring City of Moore/Moore Police Department policies and/or state law with no emergency law enforcement purpose of any kind,

14

violated the constitutional rights of Emily Gaines under the Fourteenth Amendment when he sped through the intersection traveling at more than 90 miles per hour, causing her death.

103. Officer Lloyd's deliberately indifferent, intentional, and reckless behavior was ongoing from the time he left his home and at all times was informed by calculation and individual choice to deliberately ignore public safety in the absence of an emergency law enforcement objective.

104. Nothing prevented Officer Lloyd from adhering to City of Moore/Moore Police Department policies and/or state traffic law while he drove the 3.4 miles between his home and where he killed Emily Gaines.

105. Officer Lloyd, driving his personal vehicle, with no emergency lights or sirens and with no emergency law enforcement objective, exercised his power as a police officer improperly, irresponsibly, recklessly, and utterly without justification.

106. The Constitutional right of Emily Gaines not to be killed by a police officer acting under color of state law and willfully and with deliberate indifference to the extreme risk of the harm he did in fact cause by ignoring traffic laws and departmental policies and driving in an unsafe manner without justification was clearly established at the time of collision on December 14, 2019, as recognized by the Supreme Court in *Country of Sacramento v. Lewis,* 523 U.S. 833 (1998); most recently by the 10th Circuit in and *Browder v. City of Albuquerque,* 787 F.3d 1076 (10th Cir., 2015) and as far back as *Williams v. Denver, City and County of,* 99 F. 3d. 1009 (10th Cir., 1996).

107. Officer Lloyd was on notice based on a number of reported decisions including, but not limited to, *Green v. Post,* 574 F.3d 1294 (10th Cir., 2009), *Browder v. City of*

15

*Albuquerque,* 787 F.3d 1076 (10th Cir., 2015), *Williams v. Denver, City and County of,* 99 F. 3d. 1009 (10th Cir., 1996), and the Supreme Court's decision in *Country of Sacramento v. Lewis,* 523 U.S. 833 (1998) that his conscious and ongoing decision to speed in his vehicle while acting within the scope of his job duties but in the absence of any emergency law enforcement purpose, was not only willfully and deliberately indifferent to the safety of the citizens whose duty it was for him to protect; but also that his unjustified, reckless, and willful behavior violated the constitutional rights of those citizens.

108. Emily Gaines' right not to be killed by a policer officer driving in a dangerous and unlawful manner, including deliberately speeding, in the absence of any emergency law enforcement objective has been clearly established and Officer Lloyd was or should have been on notice of Gaines' rights under the Fourteenth Amendment of the United States Constitution.

109. Officer Lloyd's deliberate and unjustified violation of Emily Gaines's Fourteenth Amendment rights was the direct and proximate cause of the death of Emily Gaines, resulting in damages to the Estate of Emily Gaines.

110. The conduct of Officer Lloyd was so extreme and reckless that punitive damages are warranted in an amount to be determined by the trier of fact.

## COUNT II: VIOLATION OF EMILY GAINES' CIVIL RIGHTS BY THE CITY OF MOORE/MOORE POLICE DEPARTMENT AND JERRY STILLINGS AND TODD STRICKLAND

111. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

112. Defendant City of Moore/Moore Police Department, by and through their official policy-maker, and Defendant Stillings and Strickland were aware that pursuant to 47 O.S. § 11-

16

106 law enforcement officials can only exceed the maximum speed limits "when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm."

113. The above-described conduct of Officer Lloyd reflects an established policy, practice, custom, or decision, officially adopted or informally accepted, ratified or condoned by Defendant City of Moore/Moore Police Department, and its officials and employees, that consists of encouraging police officers to disobey posted speed limit even when no legitimate emergency law enforcement purpose is present.

114. Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland have an affirmative duty to take action to properly train and supervise its employees or agents and prevent their unlawful actions.

115. Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland had the duty to impose policies so officers, such as Officer Lloyd, would have known that speeding in the absence of a legitimate law enforcement objective was unlawful and posed an unreasonable risk of grave constitutional injury to citizens.

116. Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland failed to properly train and supervise its employees or agents in a manner and to an extent that amounts to deliberate indifference. Officer Lloyd engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

117. Upon information and belief, Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland had a policy, custom, and procedure of not ensuring that officers like Officer Lloyd were appropriately and adequately trained as to when and under what circumstances officers were allowed to disobey posted speed limits.

118. Upon information and belief, Defendant City of Moore/Defendant Moore Police Department, acting through its subordinate law enforcement officers, had a persistent, widespread practice of depriving citizens of their constitutional rights, that it was sufficiently common and well established as to constitute municipal policy or custom.

119. Inadequate training and supervision of Officer Lloyd in reference to the proper procedures to be used when in a vehicle performing a law enforcement task that was not emergent, was so likely to result in grave constitutional injury to citizens that the failure to provide adequate training and supervision to Officer Lloyd in these areas constituted a deliberate indifference to and acquiescence in such injury to Gaines.

120. Officer Lloyd's actions and/or inactions stem from the execution of a government policy, custom, or official decision of indifference as to the protection of citizens' constitutional rights and his actions can fairly be said to represent such a policy and custom.

121. Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland failure to ensure and accomplish or enforce such proper training caused Officer Lloyd to effectuate an improper use of his police powers by disobeying traffic laws in the absence of a legitimate law enforcement situation in violation of the U.S. Constitution, proximately and directly causing Emily Gaines's death.

## COUNT III: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

122. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

123. Defendant City of Moore/ Moore Police Department and Defendants Stillings and Strickland were negligent in the hiring, training, supervision, and retention of Moore Police Officer Lloyd, who recklessly caused the death of Emily Gaines by deliberately

18

speeding and ignoring traffic laws despite complete absence of legitimate law enforcement objectives or exigencies of any kind.

124. Defendants' negligence includes but is not necessarily limited to:

a. Inadequate screening of Officer Lloyd as a prospective employee or patrol officer to be entrusted with a patrol vehicle.

b. Inadequate management, training, and enforcement of policies regarding officer's use of vehicles while on duty, including adherence to all applicable laws and Moore Police Department policies.

c. Inadequate training and supervision of officers with respect to the importance to the public safety of officers adhering to applicable laws and Moore Police Department policies with respect to the operation of motor vehicles while working under the scope of their employment.

125. Defendants' negligence in hiring, training, supervision, and retention of Moore Police Officers such as Officer Lloyd, was the actual and proximate cause of Emily Gaines's death.

## COUNT IV: NEGLIGENCE AND RECKLESS CONDUCT OF OFFICER LLOYD AGAINST THE CITY OF MOORE AND THE CITY OF MOORE POLICE DEPARTMENT

126. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

127. Officer Lloyd had a duty to act reasonably when driving a motor vehicle to prevent harm to Emily Gaines and others.

128. In addition to acts previously complained of herein, on December 14, 2019, Officer Lloyd, while performing tasks for the Moore Police Department, acted unreasonably and

19

negligently when he operated his vehicle in a careless, reckless and willfully wanton manner, specifically failing to:

a.    Keep a proper lookout, as required by 47 O.S. § 11-901b;

b.    Operate his vehicle in a reasonably prudent and non-reckless manner, as required by 47 O.S. § 11-901 and 47 O.S. § 11-903; and

c.    Drive at a reasonable speed, as required by 47 O.S. § 11-801.

129. Emily Gaines's injuries, suffering and death were a direct and proximate result of the aforementioned negligent and reckless acts and/or omissions of the Defendant Officer Lloyd.

130. In addition to the negligent, reckless, and willfully wanton manner in which Officer Lloyd operated the 2014 Dodge Charger, these acts and/or omissions were in violation of certain Oklahoma State Statutes which were in force and effect on December 14, 2019, and such Statutes had the purpose of protecting such people as the Plaintiffs from the type of harm suffered. As such, violation of these specific Statutes and Ordinances constitutes negligence "per se" and the violation of said statutes and ordinances was a proximate cause of the injuries, suffering and death of Emily Gaines, and damages to the Plaintiffs.

131. The above actions by Officer Lloyd, while performing a task for the City of Moore police department, at minimum constitute negligence and reckless operation of a motor vehicle, subjecting the Defendant City of Moore to liability under the Oklahoma Governmental Tort Claims Act.

20

132. In the alternative, Officer Lloyd was acting outside the scope of his employment at all relevant times, such that Officer Lloyd is personally liable for the damages caused to the Plaintiffs.

## CAUSTATION OF PLAINTIFFS' INJURIES AND DAMAGES

133. Plaintiffs further incorporate all previous allegations and statements as if fully restated herein.

134. The injuries and damages sustained by Plaintiffs, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above independent duties.

135. The injuries and damages sustained by Plaintiffs were a probable consequence from Defendants' violation of one or more of the above described independent duties.

136. Defendants should have foreseen and anticipated that a violation of one or more of the above- described independent duties would constitute an appreciable risk of harm to others, including Emily Gaines.

137. If Defendants had not violated one or more of the above- described independent duties then Emily Gaines' injuries, death, and other damages would not have occurred.

## COMEPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

138. Plaintiffs incorporate all previous allegations and statements as if fully restated herein.

139. Plaintiffs' injuries and damages include but are not limited to all wrongful death damages pursuant to 12 O.S. § 1053, including but not limited to: (1) medical and burial expenses, (2) loss of consortium and grief, (3) mental pain and anguish of the decedent, (4) pecuniary loss to survivors, and (5) grief and loss of companionship to children and parents of the decedent.

140. Plaintiffs' injuries and damages include but are not limited to all damages available for a claim for a death caused by a violation of civil rights, such as medical and burial expenses, pain and suffering before death, loss of earnings based upon probable duration of victim's life had the injury not occurred, victim's loss of consortium, and other damages recognized in common-law tort actions.

141. Plaintiffs' injuries and damages include but are not limited to all damages available for claims brought pursuant to 12 O.S. § 1051, as well as all other available damages pursuant to Oklahoma and Federal law.

## AMOUNT OF DAMAGES

142. Plaintiffs' injuries and damages are in excess of the amount required for diversity jurisdiction under 28 U.S.C. 1332 (currently $75,000.00), plus attorney fees, interest, costs and all such other and further relief for which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiffs for each and every element of damages that have been suffered.

## PUNITIVE DAMAGES

143. Plaintiffs incorporate all previous allegations and statements as if fully restated herein.

144. Plaintiffs are entitled to punitive damages on claims brought against individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Emily Gaines's federally protected rights.

145. Plaintiffs are entitled to punitive damages on claims brought against individual Defendants on state law claims where said individual Defendants were acting outside the

22

scope of their employment, as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Emily Gaines's protected rights.

146. Plaintiffs are entitled to punitive damages on all other claims pursuant to 12 O.S. § 1053.

## DEMAND FOR JURY TRIAL

147. Plaintiffs demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

148. Plaintiffs reserve the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiffs pray for judgement against Defendants in a sum in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000) plus interest, attorney's fees, costs, and all such other relief as to which Plaintiff may be entitled.

Respectfully submitted,

Chris Hammons, OBA #20233
Jason Hicks, OBA# 22176
Jonathan Ortwein, OBA#32092
LAIRD HAMMONS LAIRD, PLLC
1332 S.W. 89th St.
Oklahoma City, OK 73159
Telephone:    405.703.4567
Facsimile:    405.703.4061
E-mail:chris@lhllaw.com
        jason@lhllaw.com
        jonathan@lhllaw.com
ATTORNEYS FOR PLAINTIFFS

23