IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN GAINES, in his individual capacity and Personal Representative of the Estate of EMILY GAINES, *et al.*, </br></br>     Plaintiffs,</br></br>v.</br></br>CITY OF MOORE, a municipal corporation, *et al.*,</br></br>     Defendants. | )</br>)</br>)</br>)</br>)</br>)</br>)</br>)  Case No. CIV-20-851-D</br>)</br>)</br>)</br>)</br>)</br>) |

## ORDER

Before the Court is Defendants City of Moore, Todd Strickland, Jerry Stillings and Todd Gibson's Motion to Dismiss [Doc. No. 7]. Plaintiffs filed a response [Doc. No. 14], to which Defendants replied [Doc. No. 15].

## BACKGROUND

This case involves a tragic car accident. On the morning of December 14, 2019, Defendant Kyle Lloyd, a Moore police officer, was off-duty. While at home, Lloyd received a phone call from another officer who had locked his keys in his police car, and asked Lloyd to bring a spare key to the Chick-Fil-A in Moore. Lloyd left his home in his personal vehicle. While driving to Chick-Fil-A, Lloyd exceeded the posted speed limit of fifty miles per hour. As Lloyd approached the intersection of South Sooner Road and SE 134th St., Lloyd was traveling ninety-four miles per hour. As Lloyd approached the intersection, he applied his brakes. Unfortunately, Lloyd collided with Emily Gaines, who

was on her way to take the ACT college admission exam. Ms. Gaines died at the scene of the accident.

Plaintiffs filed the instant suit against the City of Moore, Todd Strickland, Jerry Stillings, Todd Gibson,[1] and Kyle Lloyd.[2] *Id.* at 1. Plaintiffs seek to hold the City of Moore liable pursuant to 42 U.S.C. § 1983 on a theory of municipal liability. Plaintiffs seek to hold Defendants Strickland and Stillings liable in their individual capacities on a theory of supervisory liability. *Id.* Plaintiffs also allege various state law negligence claims against Defendants. Defendants City of Moore, Strickland, Stillings, and Gibson filed the instant motion to dismiss [Doc. No. 7].

## STANDARD OF DECISION

A complaint must contain "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court will accept as true all well-pled factual allegations and construe them in the light most favorable to the plaintiff. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

---

[1] Plaintiffs state that "Defendant Todd Gibson is currently the Chief of Police, employed by and working for the City of Moore and/or the Moore Police Department. Defendant Todd Gibson is currently the official policy-maker for the City of Moore Police Department. As such, pursuant to Fed. R. Civ. P. 25(d), Defendant Gibson is properly named as a Defendant in his official capacity." Am. Pet. [Doc. No. 1-5], ¶ 7. Plaintiffs do not allege specific causes of action against Defendant Gibson.

[2] Plaintiffs allege that Lloyd, in his individual capacity, violated Ms. Gaines civil rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. *Id.* ¶¶ 96–110. Plaintiffs also allege negligence claims against Lloyd. *Id.* ¶¶ 126–132

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citation omitted). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

"[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. *See also Twombly*, 550 U.S. at 558 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citation omitted). Courts may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## DISCUSSION

### I.   Todd Gibson

Although individual capacity suits seek to impose personal liability on a government actor for actions taken under color of law, official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citation omitted). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the

entity." *Id.* at 166; *see also Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

Where a plaintiff sues both a person in his official capacity and the entity, courts have dismissed the official capacity claims as redundant. *See French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. Jan. 9, 2019) (dismissing official capacity claims against police officers because they were "duplicative" of the claims against the city); *Cutter v. Metro Fugitive Squad*, Case No. CIV-06-115-GKF, 2008 WL 4068188, at *5 (W.D. Okla. Aug. 29, 2008) (dismissing official capacity claims as "simply redundant" because the plaintiffs had sued the government entities); *Doe v. Douglas Cnty. School Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. Oct. 17, 1991) (dismissing the "redundant" official capacity claims as a matter of "judicial economy and efficiency").

The City of Moore is a named defendant and has joined in this motion to dismiss. Suing Gibson in his official capacity is redundant, and the official capacity claims against Gibson are dismissed.

For the first time, Plaintiffs assert in their response brief that "Gibson should remain a party to this lawsuit, in his individual capacity." *See* Pl.'s Resp. Br. [Doc. No. 14 at 24]. The amended petition, however, only lists Gibson in his official capacity. *See* Am. Pet. [Doc. No. 1-5 at 1, 4].[3]

---

[3] The amended petition, which is attached to the notice of removal, is the operative pleading in the instant case. *See* Notice of Removal [Doc. No. 1-5].

## II.     City of Moore

Plaintiffs seek to hold the City of Moore ("the City") liable pursuant to 42 U.S.C. § 1983 on a theory of municipal liability. To make out a 42 U.S.C. § 1983 claim under a theory of municipal liability, a plaintiff must show: "(1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury." *Soto for estate of Jimenez v. Bd. of Cnty. Comm'rs of Caddo Cnty., Okla.*, 748 F. App'x 790, 793–94 (10th Cir. 2018).

A "'single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability.'" *Id.* (quoting *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009)). Thus, "'[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.'" *Soto*, 748 F. App'x at 794 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

As to an official policy or custom, a plaintiff must plead sufficient facts to identify:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiffs assert the existence of two policies. First, Plaintiffs contend that the City was aware that police officers should only exceed speed limits when responding to an emergency call, in pursuit of an actual or suspected violator of law, or when responding to a fire alarm. *See* Am. Pet. [Doc. No. 1-5], ¶ 112. Thus, Plaintiffs allege that Lloyd's conduct reflects an "established policy, practice, custom, or decision, officially adopted or informally accepted, ratified, or condoned" by the City that encouraged officers to disobey speed limits without a legitimate purpose. *Id.* ¶ 113. Second, Plaintiffs allege that the City had a policy of failing to ensure officers understood when they could exceed posted speed limits. *Id.* ¶ 117.

### A. Formal Policy

The Court first looks to whether Plaintiffs' allegations constitute "a formal regulation or policy statement." *Bryson*, 627 F.3d at 788. Plaintiffs allege the existence of a policy that encouraged officers to disobey posted speed limits with no legitimate purpose. Am. Pet. [Doc. No. 1-5], ¶ 113. Plaintiffs cite to no facts to support this conclusory statement. The amended petition is devoid of factual matter to support a plausible claim that the City had a formal policy that encouraged officers to exceed speed limits without a proper purpose.

### B. Informal Custom

The Court next looks to whether Plaintiffs' allegations constitute "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F.3d at 788.

Aside from Plaintiffs' conclusory allegations, Plaintiffs provide no factual matter to support their assertions. For instance, Plaintiffs provide no examples of officers speeding without a legitimate purpose, no examples of officers speeding in general, and no examples of Lloyd speeding without a legitimate purpose on other occasions. Plaintiffs assert only that Lloyd's conduct reflects a custom of disobeying posted speed limits without a legitimate purpose. The behavior of one employee is insufficient to establish a widespread custom for purposes of municipal liability. *See Soto*, 748 F. App'x at 794 ("A 'single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability.'").

## C. Policymakers

The Court looks next to whether the acts occurred because of "(3) the decisions of employees with final policymaking authority; [or] (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Bryson*, 627 F.3d at 788. The amended petition does not contain factual matter as to any decisions or ratifications by final policymakers. Further, Plaintiffs do not allege facts to indicate that final policymakers for the City ratified—or even knew about—Lloyd's actions.[4]

---

[4] Because Plaintiff has failed to allege facts sufficient to support a finding of a policy or custom, the Court need not address the second and third elements—causation and deliberate indifference.

### D. Failure to Train

Plaintiffs allege that the City "failed to properly train and supervise its employees or agents in a manner and to an extent that amounts to deliberate indifference." Am. Pet. [Doc. No. 1-5], ¶ 116. Plaintiffs also assert that the City had a policy or custom of "not ensuring that officers like Officer Lloyd were appropriately and adequately trained as to when and under what circumstances officers were allowed to disobey posted speed limits." *Id.* ¶ 117.

One of the bases for establishing municipal liability is the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.'" *Bryson*, 627 F.3d at 788 (citation omitted). The Tenth Circuit has explained the deliberate indifference requirement:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson*, 627 F.3d at 789 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)). Failure to train liability cannot be based on a contention that an officer negligently carried out his duties. *See City of Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training

8

program."). For instance, it may be "that an otherwise sound program has occasionally been negligently administered." *Id.* The Supreme Court in *City of Canton* added:

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton,* 489 U.S. at 391.

Here, Plaintiffs allege that the City "failed to properly train and supervise its employees or agents in a manner and to an extent that amounts to deliberate indifference." Am. Pet. [Doc. No. 105], ¶ 116. Aside from this conclusory statement, Plaintiffs provide no facts as to the training program or how it was deficient. Regarding deliberate indifference, Plaintiffs do not include facts to support that the City had constructive or actual notice. Plaintiffs do not assert a pattern of tortious conduct or facts to support that the alleged violation was highly predictable or plainly obvious because of the City's action or inaction. Plaintiffs include only a formulaic recitation of the elements of a failure to train claim. "Mere conclusory allegations that an officer . . . [is] unsatisfactorily trained will not 'suffice to fasten liability on the city.'" *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2018 WL 1884691, at *3 (D. Colo. May 18, 2011) (quoting *City of Canton*, 489 U.S. at 390–91). *See id.* (dismissing claims because they set forth only a recitation of the elements of a claim based on failure to train). Plaintiffs fail to allege sufficient factual matter to state a plausible failure to train and supervise claim.

### III. Todd Strickland and Jerry Stillings

Plaintiffs allege individual capacity claims against Strickland and Stillings that are premised on a theory of supervisory liability. When a plaintiff names an official in his individual capacity, the plaintiff is seeking "to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

"Because § 1983 . . . [is a] vehicle[] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Id.* at 1226 (emphasis in original). "The same particularized approach applies with full force when a plaintiff proceeds under a theory of supervisory liability." *Id.* A plaintiff "must . . . identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violation." *Id.*

A supervisor is liable under § 1983 when "an 'affirmative link' exists between the deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987) (quoting *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984)). To show such link, a plaintiff must allege (1) personal involvement; (2) causation; and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

### A. *Personal Involvement*

The first element of a supervisory liability claim is personal involvement. Although federal courts appear to uniformly agree that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) imposed a stricter liability standard for personal involvement, the Tenth Circuit has not decided the precise contours of that standard. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). Further, the Tenth Circuit's post-*Iqbal* decision in *Dodds* remains viable, providing that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'" *Dodds*, 614 F.3d at 1199 (*quoting* 42 U.S.C. § 1983).

Plaintiffs allege that Strickland and Stillings were responsible for certain policies that caused the violation of Ms. Gaines's constitutional rights. Am. Pet. [Doc. No. 1-5], ¶¶ 114–115. Specifically, Strickland and Stillings, as former chiefs of police, had a duty to impose policies informing officers that speeding without a legitimate purpose was against the law and "posed an unreasonable risk of grave constitutional injury to citizens." *Id.* ¶ 115. Plaintiffs assert that Strickland and Stillings violated this duty, and they had a policy of "not ensuring that officers . . . were appropriately and adequately trained" as to when they could disobey speed limits. *Id.* ¶ 117.

Plaintiffs' conclusory statements are insufficient to state a plausible claim against Strickland and Stillings. Plaintiffs allege no specific facts as to how Strickland or Stillings

11

violated their duty. Further, Plaintiffs' allegations that Strickland and Stillings had a policy of "not ensuring" that officers were trained are devoid of factual support.

### B. Causation

Even if Plaintiffs' allegations in the amended petition included sufficient facts as to personal involvement, the allegations are insufficient as to causation. Causation "requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation." *Schneider*, 717 F.3d at 768. A plaintiff may do this by showing that the defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege that in failing to ensure proper training, Strickland and Stillings "caused Officer Lloyd to effectuate an improper use of his police powers by disobeying traffic laws in the absence of a legitimate law enforcement situation in violation of the U.S. Constitution, proximately and directly causing Emily Gaines's death." Am. Pet. [Doc. No. 1-5], ¶ 121. This allegation requires a conclusory leap, asking the Court to speculate that a general failure to train is the direct and proximate cause of the accident. This statement includes no facts to support how Strickland or Stillings specifically set in motion a series of events that they knew or should have known would have caused the incident.

### C. State of Mind

The third element of supervisory liability requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind. *Schneider*, 717 F.3d at 768. Plaintiff must allege that Strickland and Stillings were deliberately indifferent. *See*

*Dodds*, 614 F.3d at 1205. Put another way, Plaintiffs must allege facts to support that Strickland and Stillings had actual or constructive notice that their failure to train was substantially certain to result in a constitutional violation, and they consciously or deliberately disregarded the risk of harm.

Plaintiffs allege no facts to support that Strickland or Stillings had actual or constructive notice of the risk of harm—much less that they consciously disregarded it. Plaintiffs include only bare assertions that Strickland and Stillings "would have known" that speeding without a legitimate purpose posed an unreasonable risk of constitutional injury.

### D. Qualified immunity

Strickland and Stillings assert they are entitled to qualified immunity as to Plaintiffs' claims. "[W]hen a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotation marks omitted). Courts "may decide which of these two prongs to address first, and need not address both." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Plaintiffs have failed to plead sufficient facts to show that Strickland and Stillings violated a statutory or constitutional right. Plaintiffs point to "[t]he rights of Ms. Gaines' to not be killed by a police officer who was speeding in a nonemergent situation." Pl.'s Resp. Br. [Doc. No. 14 at 18]. As discussed herein, however, and taking the well-pled facts as true, Plaintiffs have failed to show that Strickland or Stillings violated Ms. Gaines's rights. Thus, the Court must dismiss the § 1983 claims against Strickland and Stillings.

## IV. State Law Claims

Plaintiffs also allege that Defendants should be held liable based on various state law claims related to vicarious liability. The Court, however, declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, the Court dismisses the state law claims without prejudice. *See Gobert v. Newton-Embry*, 820 F. App'x 783, 787–88 (10th Cir. 2020) (determining the district court had the option of dismissing remaining state law claims or remanding them and finding it was not inappropriate to dismiss them); *accord Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1232 (10th Cir. 2020) (noting the "regular practice in this circuit of dismissing without prejudice state-law claims for which the district court has only supplemental, rather than original, jurisdiction when the federal-law claims to which they are supplemental are dismissed early in the litigation"); *Tonkovich v. Kansas Bd. of Regents, Univ. of Kansas*, 254 F.3d 941, 945 (10th Cir. 2001) (stating that 28 U.S.C. § 1367 grants the court discretion to dismiss supplemental state law claims when the court dismisses the federal claims over which it had original jurisdiction). As such, the Court

does not address the parties' arguments related to the Oklahoma Governmental Tort Claims Act.

## V.     Leave to Amend

The Court finds that Plaintiffs' remaining action against all Defendants except Defendant Lloyd should be dismissed. The Court further finds that Plaintiffs need not be granted leave to amend their pleading at this time.[5]

## CONCLUSION

For the reasons discussed herein, Defendants City of Moore, Todd Strickland, Jerry Stillings and Todd Gibson's Motion to Dismiss [Doc. No. 7] is **GRANTED.**

**IT IS THEREFORE ORDERED** that the claims against Defendants Gibson, the City of Moore, Strickland, and Stillings are dismissed without prejudice.

**IT IS SO ORDERED** this 30th day of July, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[5] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment"). In this case, the scheduling order to be entered pursuant to FED. R. CIV. P. 16(b)(1) will establish a deadline for motions to amend pleadings.