IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN GAINES, in his individual capacity and Personal Representative of the Estate of EMILY GAINES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MOORE, a municipal corporation, *et al.*, <br><br> Defendants. | Case No. CIV-20-851-D |

**ORDER**

Before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants City of Moore, Todd Strickland, Jerry Stillings, and Todd Gibson [Doc. No. 29]. Plaintiffs filed a response [Doc. No. 36], to which Defendants replied [Doc. No. 39]. This matter was initially filed in the District Court for Cleveland County, Oklahoma; Defendants removed the action to this Court and moved to dismiss the claims against them. The Court granted Defendants' first Motion to Dismiss [Doc. No. 7], dismissing the claims against these defendants without prejudice. *See* Order [Doc. No. 20]. The Court later granted Plaintiffs leave to amend, and Plaintiffs filed their Second Amended Complaint [Doc. No. 28]. Asserting similar grounds, Defendants contend Plaintiffs' claims against them must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state claims for which relief may be granted.

Plaintiffs also assert claims against Defendant Kyle Lloyd, in his individual capacity. Lloyd does not join in the instant Motion to Dismiss; instead, he filed an Answer to the Second Amended Complaint [Doc. No. 30].

## BACKGROUND

This case involves a tragic car accident. On the morning of December 14, 2019, Kyle Lloyd, a Moore police officer, was at home when he received a phone call from another officer who had locked his keys in his police car. That officer told Lloyd to bring a spare key to the Chick-Fil-A in Moore; that officer told Lloyd he needed to hurry. Lloyd left his home in his personal vehicle. While driving to Chick-Fil-A, Lloyd exceeded the posted speed limit of 50 miles per hour. As Lloyd approached the intersection of South Sooner Road and SE 134th St., he was traveling 94 miles per hour. Before Lloyd reached the intersection, he applied his brakes. Unfortunately, Lloyd collided with a vehicle driven by Emily Gaines, who was on her way to take the ACT college admission exam. At the moment of the collision, Lloyd was travelling 77 miles per hour. Ms. Gaines died at the scene of the accident.

Plaintiffs filed this suit against the City of Moore, Todd Strickland, Jerry Stillings, Todd Gibson, and Kyle Lloyd. Plaintiffs seek to hold the City of Moore liable pursuant to 42 U.S.C. § 1983 on a theory of municipal liability. Plaintiffs further seek to hold Defendants Strickland and Stillings liable in their individual capacities on a theory of supervisory liability. Plaintiffs also assert a state law negligence claim against the City. As discussed above, Defendants City of Moore, Strickland, Stillings, and Gibson, but not Defendant Lloyd, filed the instant motion to dismiss [Doc. No. 29].

**STANDARD OF DECISION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In assessing plausibility, a court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, conclusory allegations are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012); *see also Iqbal*, 556 U.S. at 678–79.

Further, in § 1983 cases, it is particularly important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). Indeed, "it is incumbent upon a plaintiff to 'identify specific actions taken by particular defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)) (emphasis added by the court in *Pahls*).

## DISCUSSION

### I. Todd Gibson

In their Second Amended Complaint, Plaintiffs assert claims against both the City of Moore and Gibson in his official capacity. They allege that the City can be sued through Gibson as the final policymaker for the Moore Police Department. Plaintiffs do not assert any claims against Gibson in his individual capacity. In the Court's Order granting Defendants' first motion to dismiss, the Court dismissed the claims against Gibson in his official capacity because they are redundant. Order [Doc. No. 20] at p.4 ("Where a plaintiff sues both a person in his official capacity and the entity [of which the person is an agent], courts have dismissed the official capacity claims as redundant."). Although in the instant Motion to Dismiss Defendants do not raise this ground for dismissal of the claims against Gibson, the Court, consistently with its previous Order, finds the redundant claims against Gibson should be dismissed.

### II. The City of Moore

Plaintiffs seek to hold the City of Moore liable pursuant to 42 U.S.C. § 1983 on a theory of municipal liability. To make out a § 1983 claim under a theory of municipal liability, a plaintiff must show: "(1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable

constitutional injury." *Soto for estate of Jimenez v. Bd. of Cnty. Comm'rs of Caddo Cnty., Okla.*, 748 F. App'x 790, 793–94 (10th Cir. 2018). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Here, Plaintiffs allege the existence of four City policies or customs. Plaintiffs assert that the City:

- extends police officers "preferential treatment" not extended to ordinary citizens, in that excessive speeding and car accidents caused by officers are not fully investigated;

- treats an officer's first wreck as "free," in that the officer does not "face any consequences for his first wreck" and "the wreck [does] not go into his file";

- keeps "only one paper copy of an officer's personnel file," with "no paper or digital back-ups"; and

- allows police officers "virtually unfettered access to their personnel files," permitting them "to unilaterally and permanently destroy portions of [their] own personnel file."

Second Amended Complaint [Doc. No. 28] at ¶¶ 101, 107, 113–14, 121. Plaintiffs also allege deliberately indifferent training and supervision. *Id.* at ¶¶ 103–109.

### A. Formal Policy and Widespread Custom

The Court first looks to whether these allegations constitute "a formal regulation or policy statement" or "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and

5

well settled as to constitute a custom or usage with the force of law." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). As support for the alleged policies or widespread customs listed above, Plaintiffs allege that:

- Lloyd has a reputation in the Moore Police Department for driving aggressively and recklessly;
- Lloyd was once stopped by another officer for traveling 127 miles per hour on the same road where his collision with Ms. Gaines occurred;
- Lloyd was involved in at least two previous car accidents while working as a Moore police officer;
- one of those accidents occurred when Lloyd was driving recklessly and in excess of the speed limit and "resulted in the death of an elderly woman"; and
- two days after Lloyd's collision with Ms. Gaines, the director of human resources for the police department allowed Lloyd access to his personnel file and permitted him to destroy portions of it.

Second Amended Complaint [Doc. No. 28] at ¶¶ 103, 105, 106, 108, and 115.

These factual allegations are insufficient to give rise to a reasonable inference that the City has instituted the formal policies alleged by Plaintiffs. Notably, none of these factual allegations describe conduct or incidents involving any officer other than Lloyd. Further, as stated in the Court's previous Order, the behavior of one employee is insufficient to establish a widespread custom for purposes of municipal liability. *See Soto*, 748 F. App'x at 794 ("A 'single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability.'"). Although the Court must accept all well-pleaded allegations in the Second Amended Complaint as true at this stage, Plaintiffs' allegations that the City formally established the policies or informally adopted the

widespread practices listed above are merely conclusory. Plaintiffs, therefore, do not state a plausible municipal liability claim on the basis of formal policies or widespread customs.

### B. Deliberately Indifferent Training or Supervision

Another way a plaintiff can establish the existence of a policy or custom for purposes of a § 1983 municipal liability claim is to show a "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.'" *Bryson*, 627 F.3d at 788 (citation omitted). The Tenth Circuit has explained the deliberate indifference requirement:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Id.* at 789 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)). Failure to train liability cannot be based on a contention that an officer negligently carried out his duties. *See City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). For instance, it may be "that an otherwise sound program has occasionally been negligently administered." *Id.* The Supreme Court in *City of Canton* added:

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton,* 489 U.S. at 391.

Here, Plaintiffs allege the City insufficiently trained police officers as to when they were permitted to exceed the speed limit. To support this allegation, Plaintiffs rely on allegations of Lloyd's motor vehicle misconduct, specifically the two previous accidents he has allegedly caused as a Moore police officer and his speeding violation. Plaintiffs rely solely on allegations of Lloyd's conduct to support their failure to train theory of municipal liability. The Second Amended Complaint, thus, lacks factual allegations of a pattern of similar violations by Moore police officers.

Without a pattern of constitutional violations, Plaintiffs must allege facts demonstrating that this case falls within the "narrow range of circumstances" where "a violation of federal rights is a highly predictable or plainly obvious consequence of" the City's alleged failure to train officers as to when they may exceed posted speed limits. *See Bryson*, 627 F.3d at 789. Even taking Plaintiffs' factual allegations as true, the Court is unconvinced that the alleged failure to train in this case is one of those "rare" circumstances. *See Connick v. Thompson*, 563 U.S. 51, 64 (2011).

In analyzing the sufficiency of allegations regarding a municipality's training deficiencies without the support of a pre-existing pattern of tortious conduct, the Tenth

Circuit has looked to whether "specific or extensive training" is necessary for officers to know whether their conduct is appropriate. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1288 (10th Cir. 2019) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 774 (10th Cir. 2013)). If "[e]ven an untrained law enforcement officer would have been well aware" that his conduct was inappropriate or if the situation encountering the officer did not "involve technical knowledge or ambiguous 'gray areas' in the law that would make it 'highly predictable'" that an officer in that position "would need 'additional specified training' to know how to handle the situation correctly," a failure to train municipal liability claim does not fall within this "narrow range of circumstances." *Id.* at 1287–88.

Here, Plaintiffs assert that since the decision of a police officer whether to exceed the speed limit is a "usual and recurring" situation, violations of constitutional rights are highly predictable or plainly obvious consequences of the City's alleged failure to train officers as to when they may exceed posted speed limits. The Court, however, is not convinced that choosing whether to exceed a posted speed limit is a situation requiring specific or extensive training to put officers on notice that they cannot drive recklessly, at such extreme speeds. Even untrained officers would have understood driving nearly twice the speed limit under similar circumstances would be inappropriate. Further, this is not a situation involving technical knowledge or ambiguous gray areas; the allegations against Lloyd reflect a conscious decision to drive recklessly to deliver a spare key to a fellow officer, a decision that further training would not likely prevent. *See id.* (quoting *R.A. v. City of N.Y.*, 206 F. Supp. 3d 799, 803 (E.D.N.Y. 2016)). The Court, therefore, finds

9

Plaintiffs do not state a plausible municipal liability claim on the basis of a deliberately indifferent failure to train.

Plaintiffs also claim the City's alleged deficient supervision and discipline of Lloyd was deliberately indifferent. Plaintiffs, again, support this claim only with factual allegations regarding Lloyd and his supervision. The Second Amended Complaint does not include allegations showing similar speeding or reckless driving violations by Moore police officers. Thus, Plaintiffs' failure to supervise claim must fit within the narrow range of circumstances where violation of federal rights is a highly predictable or plainly obvious consequence of the failure to supervise or discipline Lloyd. *See Bryson*, 627 F.3d at 789; *Waller*, 932 F.3d at 1285.

Plaintiffs' allegations describe egregious motor vehicle misconduct on the part of Lloyd during his employment as a police officer. They allege Lloyd's supervisors knew of his reputation for driving recklessly and aggressively, multiple previous car accidents—including one resulting in the death of another driver—Lloyd caused, and a speeding violation where Lloyd was stopped by another officer for driving 127 miles per hour on the same road where the collision with Ms. Gaines occurred. Plaintiffs allege that Lloyd was not disciplined for his misconduct and that, contrarily, Lloyd's supervisors deliberately chose not to document his first car accident and permitted Lloyd to partially destroy documentation of his subsequent accidents in his personnel file.

These are serious allegations; they give rise to a reasonable inference that serious injury or death of another motorist on the roadway—here, the death of Ms. Gaines—was a highly predictable and plainly obvious consequence of the City's alleged failure to

supervise and discipline Lloyd for his alleged motor vehicle misconduct. Accordingly, the Court finds Plaintiffs municipal liability claim based on the City's deliberately indifferent failure to supervise should not be dismissed. At this point, this is the only plausible basis for Plaintiffs' municipal liability claim.

Finally, the Court finds Plaintiffs' third cause of action for negligent hiring, training, supervision, and retention should be dismissed.[1] "Liability under § 1983 must be predicated upon a *'deliberate'* deprivation of constitutional rights by the defendant," and not on negligence. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995) (quoting *Woodward v. City of Worland,* 977 F.2d 1392, 1399 (10th Cir.1992)) (alterations omitted) (emphasis in original); *see also Rodriguez v. Lolotai*, No. 20-CV-02541-PAB-STV, 2022 WL 911132, at *14 (D. Colo. Mar. 28, 2022) ("[A] plaintiff may not maintain a § 1983 claim based on negligence, which underlies plaintiff's negligent hiring claim.") (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

### III. Todd Strickland and Jerry Stillings

"Because § 1983 . . . [is a] vehicle[] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Id.* at 1226

---

[1] Defendants moved to dismiss this cause of action under state law standards. In their response, Plaintiffs explained this cause of action is based in federal, not state, law. [Doc. No. 36] at pp. 22–23.

(emphasis in original). "The same particularized approach applies with full force when a plaintiff proceeds under a theory of supervisory liability." *Id.*

A supervisor is liable under § 1983 when "an 'affirmative link' exists between the deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987) (quoting *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984)). To show such a link, a plaintiff must allege (1) personal involvement; (2) causation; and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

Although federal courts appear to uniformly agree that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) imposed a stricter liability standard for personal involvement, the Tenth Circuit has not decided the precise contours of that standard. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). Further, the Tenth Circuit's post-*Iqbal* decision in *Dodds* remains viable, providing that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'" *Dodds*, 614 F.3d at 1199 (quoting § 1983).

Plaintiffs allege Strickland and Stillings were Chiefs of Police for the City "during the relevant period immediately preceding and up to the date of the wreck at issue." Second Amended Complaint [Doc. No. 28] at ¶¶ 6 and 7. Plaintiffs continually, throughout the

12

Second Amended Complaint, refer to Defendants in their allegations collectively, i.e., "Defendants Stillings, Strickland, Gibson, and/or City of Moore." *See, e.g.*, *id.* at ¶¶ 102, 104, 107, 109. Apart from their allegations identifying Strickland and Stillings as parties, *id.* at ¶¶ 6 and 7, Plaintiffs do not refer to either Strickland or Stillings individually in any allegation or make any specific allegation of either Strickland's or Stillings' personal conduct. This is insufficient to demonstrate an affirmative link exists between Ms. Gaines' death and Strickland's or Stillings' personal participation, exercise of control or direction, or failure to supervise.

The Court concludes that these "and/or" allegations do not sufficiently apprise the individual defendants of the bases for the claims against them, and, further, they "do not allow the court to draw the reasonable inference that" Strickland and Stillings, in their individual capacities, "are liable for the misconduct alleged." *See Godsey v. Mitchell*, No. CIV-20-870-F, 2021 WL 681623, at *7 (W.D. Okla. Feb. 22, 2021) (quoting *Waller*, 932 F.3d at 1282) (internal quotation marks omitted). Accordingly, the Court finds the supervisory claims against them should be dismissed.

### IV. Plaintiffs' Claim under the Oklahoma Governmental Tort Claims Act

Plaintiffs assert a claim against the City under state law, alleging vicarious liability for Lloyd's negligent and reckless operation of his vehicle "while performing a task for" the City. Second Amended Complaint [Doc. No. 28] at ¶ 205. The doctrine of *respondeat superior* is applicable under the Oklahoma Governmental Tort Claims Act (GTCA). *Gowens v. Barstow*, 364 P.3d 644, 650 (Okla. 2015). "Under this doctrine an employer is

generally held liable for the willful acts of an employee acting within the scope of employment." *Id.* The GTCA defines "scope of employment" as:

> [P]erformance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

Okla. Stat. tit. 51, § 152(12). "[O]ne acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Gowens*, 364 P.3d at 650 (citing *Nail v. City of Henryetta,* 911 P.2d 914 (Okla. 1996)).

The City argues that Plaintiffs' vicarious liability claim should be dismissed because "Lloyd's negligent actions took him outside the scope of his employment." [Doc. No. 29] at p. 23. The City mostly bases this argument on other allegations in the Second Amended Complaint that Lloyd "made the deliberate, intentional, conscious, and reckless decision to ignore and violate numerous City . . . policies and procedures." *Id.* (quoting Second Amended Complaint [Doc. No. 28] at ¶ 97).

The Court, however, finds that this is not a proper basis to dismiss Plaintiffs' claim. First, for the purposes of vicarious liability, whether an employee was acting within the scope of his employment "is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts." *Nail*, 911 P.2d at 918. Second, Plaintiffs correctly point out that they may plead in the alternative. That they have pleaded Lloyd acted intentionally to violate City policies does not mean Plaintiffs are foreclosed from asserting Lloyd acted within the scope of his employment, regardless of whether those

14

assertions contradict each other or not. *See Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013) (unpublished) ("Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims."). Therefore, the Court finds Plaintiffs' vicarious liability claim against the City should not be dismissed.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants City of Moore, Todd Strickland, Jerry Stillings, and Todd Gibson [Doc. No. 29] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**IT IS THEREFORE ORDERED** that Plaintiffs' claims against Todd Gibson in his official capacity are **DISMISSED** as duplicative.

**IT IS FURTHER ORDERED** that Plaintiffs' § 1983 claims for negligent hiring, training, supervision, and retention are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' supervisory liability claims against Todd Strickland and Jerry Stillings are **DISMISSED** without prejudice.

**IT IS SO ORDERED** this 3rd day of June, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge