IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRYAN GAINES, in his individual capacity and as
Personal Representative of the Estate of EMILY GAINES, et al.,

Plaintiffs,

v.

**Case No. CIV-20-851-D**

CITY OF MOORE, a municipal corporation, et al.,

Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CITY OF MOORE'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL [Doc. 260]**

Plaintiffs respectfully submit this response in opposition to Defendant City of Moore's Motion for Judgment as a Matter of Law or for New Trial (the "City's JMOL/New-Trial Motion") [Doc. 260]. The motion should be denied.

**I. INTRODUCTION**

The City's motion rests on a false premise: that the Court gave a private-employment instruction that ignored the Oklahoma Governmental Tort Claims Act ("GTCA"). The Court did not. The Court gave Oklahoma's Supreme Court-approved scope-of-employment instruction, OUJI-CIV No. 6.7. Court's Jury Instructions [Doc. 251] at 31. The Oklahoma Supreme Court approved that instruction in 2020 with a Comment citing *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914. See OUJI-CIV No. 6.7 cmt. *Nail* is not a private-employer case. It is a GTCA case involving a municipality and a police officer. *Nail* quotes the GTCA's statutory definition of "scope of employment," including the phrase "acting in good

1

faith," and then explains that standard through the same work-connection, employer-purpose, proper/usual/necessary, and mistaken-or-unwise language the Court gave this jury.

The City therefore has not shown that the instruction materially misled the jury about the substance of the GTCA scope/good-faith inquiry. The instruction captured that inquiry in the way Oklahoma scope law applies it: by asking whether the employee was performing assigned work, doing what was proper, usual, and necessary to accomplish assigned work, doing what was customary in the employer's business, or acting with a view to furthering the employer's business, even if mistakenly or unwisely. Court's Jury Instructions [Doc. 251] at 31. And even if the Court assumes that adding the statutory phrase "good faith" would have been preferable, any omission was harmless on this record.

The City's deeper problem is that it equates good faith with the non-egregiousness of Lloyd's driving. That is not Oklahoma law. Plaintiffs do not minimize Lloyd's conduct. His speed, policy violations, non-emergency driving, and disregard for obvious danger were reckless, wrong, and devastating. But that evidence concerns the manner in which Lloyd performed the key-delivery mission. It does not compel the separate conclusion that Lloyd abandoned the City-related mission and began acting for a purely personal, corrupt, fraudulent, or malicious purpose.

The jury had ample evidence of employer-serving purpose. The stipulated facts told the jury that Lloyd was a Moore police officer; that he responded to an intra-department request to deliver patrol-car keys to a City-sponsored community-outreach event; that he possessed those keys solely because of his Moore Police Department employment; and that he believed prompt delivery was necessary to avoid possible discipline and prevent

2

interruption of the Department's public-outreach event. Court's Jury Instructions [Doc. 251] at 7-8. This was not merely a private driver carrying something useful to his employer. Lloyd was transporting City patrol-car keys, City property, to a City-sponsored event in response to another Moore officer's request. And the trial record included the City's own vehicle-assignment email for Shop With A Cop: Lt. Kyle Dudley identified the patrol vehicles to be used at the event, stated he would get spare keys ahead of time so event officers would not have to take the assigned officers' keys, and listed "16-260 Lloyd" for "Wagner." Defendants' Exhibit DC15, COM_002228-29; Minute Entry-Trial Began [Doc. 248] at 1.

The Court will also recall the bodycam evidence played at trial showing that Lloyd's key-delivery mission continued even after the wreck: Lloyd asked an Oklahoma City officer at the scene to get the keys to Shop With A Cop, and later asked another Oklahoma City officer at the hospital to bring the keys to the event. The Court received and viewed this evidence at trial; Plaintiffs cite it here as trial evidence considered by the jury, not as a new record submission. That evidence is unfavorable to Lloyd personally because it underscores his callousness, but it is probative of continued employer-serving purpose and refutes the City's abandoned-mission theory.

At most, the City has a preserved disagreement with the wording of Instruction No. 22. That is a Rule 59 argument, not a basis for judgment as a matter of law. And even as a new-trial argument it fails, because the charge as a whole accurately stated Oklahoma law, the City's proposed package risked misstating Oklahoma law by making recklessness an automatic good-faith defeat, and the City cannot show prejudice.

## II. GOVERNING STANDARDS

Rule 50(b) allows judgment as a matter of law only when the evidence, viewed in the light most favorable to the verdict, points but one way and is susceptible to no reasonable inference supporting the nonmovant. *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004). The Court may not weigh evidence, assess credibility, or substitute its view of disputed inferences for the jury's. *Id.* at 1116.

Rule 59 imposes a different standard. A new trial based on jury instructions is warranted only when the instructions, viewed as a whole and in light of the record, failed to provide the jury an adequate understanding of the governing law and prejudiced the moving party. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 771 (10th Cir. 1999); *Brodie v. Gen. Chem. Corp.*, 112 F.3d 440, 442 (10th Cir. 1997). The City is therefore wrong to treat an alleged instructional imperfection as automatic JMOL. Even if the City could show that a different instruction would have been preferable, it would still need to show both legal error and prejudice for a new trial, and it would still need to satisfy Rule 50's one-way-evidence standard for JMOL.

Oklahoma law supplies the substantive GTCA scope standard. Oklahoma's instruction statute provides that an applicable Oklahoma Uniform Jury Instruction "shall be used" unless the court determines the instruction does not accurately state the law. Okla. Stat. tit. 12, section 577.2. That does not make OUJI-CIV No. 6.7 unreviewable in federal court, but it matters. The City must show more than a preference for additional words. It must show that the Oklahoma Supreme Court-approved instruction, adopted with a *Nail* comment, inaccurately or misleadingly stated Oklahoma GTCA scope law.

4

## III. INSTRUCTION NO. 22 CORRECTLY STATED OKLAHOMA GTCA SCOPE LAW

The Court's Instruction No. 22 defined "scope of employment" in the language of OUJI-CIV No. 6.7. It told the jury that an employee acts within scope when he is doing work assigned by the employer, doing what is proper, usual, and necessary to accomplish assigned work, or doing work customary in the employer's business. Court's Jury Instructions [Doc. 251] at 31. It also told the jury that an employee must act with a view to furthering the employer's business or from an impulse or emotion naturally growing out of or related to an attempt to perform the employer's business, even if he acted mistakenly or unwisely. Id.

That instruction was not disconnected from the GTCA. In *In re Amendments to the Oklahoma Uniform Jury Instructions - Civil*, 2020 OK 3, the Oklahoma Supreme Court approved amended OUJI-CIV No. 6.7 and included a Comment citing *Nail*. See OUJI-CIV No. 6.7 cmt. *Nail* is the key point. It is a municipal GTCA police case. *Nail* begins by quoting the GTCA definition of scope of employment as performance by an employee acting in good faith within the duties of the office or employment or of tasks lawfully assigned by competent authority. *Nail*, 1996 OK 12, paragraph 11, 911 P.2d at 917. It then explains that Oklahoma recognizes respondeat superior under the GTCA and looks to whether the employee was engaged in assigned work, doing what was proper, necessary, and usual to accomplish the work, doing what was customary within the business, or acting with a view to furthering the employer's business. *Id.* paragraphs 11-13, 911 P.2d at 917-18.

That 2020 adoption decision matters. The Oklahoma Supreme Court did not approve OUJI-CIV No. 6.7 in a vacuum. It approved the instruction with *Nail* as the cited Comment authority, and *Nail* is the very case that first quotes the GTCA's "good faith" definition and

then explains the scope inquiry through assigned work, proper/usual/necessary work, customary acts, and employer-purpose principles. The City's position would mean the Oklahoma Supreme Court approved a scope instruction with a Comment citing a GTCA scope case, even though the instruction would not actually be usable in that cited GTCA case because it does not separately repeat the words "good faith." That reading makes little sense. The better reading is that the Oklahoma Supreme Court understood *Nail*'s GTCA good-faith discussion and approved an instruction that states the jury-facing scope test through the common-law factors *Nail* applied.

That is the very structure of Instruction No. 22. The City treats "good faith" as a separate talismanic phrase that must be layered on top of OUJI-CIV No. 6.7. *Nail* and OUJI-CIV No. 6.7 show why that is not error here. Oklahoma law applies the GTCA good-faith/scope inquiry through work connection, employer purpose, customary acts, and whether the employee's impulse or emotion naturally grew out of an attempt to perform employer business. The Court gave that law.

The City also ignores the surrounding instructions. The Court instructed that a political subdivision is liable for torts only when employees act within scope and is not liable for acts outside scope. Court's Jury Instructions [Doc. 251] at 28. It instructed that a municipal corporation acts only through officers and employees, and only acts within scope are acts of the City. Id. at 29. It separately defined "employee." Id. at 30. And the verdict form required the jury to make a direct scope finding. Jury Verdict [Doc. 252] at 3. The charge as a whole did not invite the jury to impose liability for conduct outside GTCA scope.

6

## IV. THE CITY'S PROPOSED INSTRUCTION PACKAGE RISKED MISSTATING THE LAW

The City's argument is not just that the words "good faith" should have appeared somewhere in Instruction No. 22. The City sought a package of instructions designed to tell the jury that Lloyd's recklessness, gross negligence, willful-and-wanton conduct, or deliberate indifference could place him outside scope. The City's Proposed Jury Instructions [Doc. 166] stated that "good faith" would not include willful misconduct, gross negligence, or recklessness, and proposed additional willful/wanton and gross-negligence immunity instructions. City's Proposed Jury Instructions [Doc. 166] at 29, 31-34. The City's JMOL/New-Trial Motion confirms that the City sought limiting instructions allowing the jury to infer bad faith from the type, nature, and severity of Lloyd's conduct. City's JMOL/New-Trial Motion [Doc. 260] at 18-19.

That requested package was not required, and parts of it risked misstating Oklahoma law. Oklahoma does not hold that reckless conduct automatically equals bad faith or outside-scope conduct under the GTCA. *Gowens v. Barstow*, 2015 OK 85, paragraph 21, 364 P.3d 644, 652, expressly rejected that automatic rule and overruled *Fehring* to the extent *Fehring* suggested reckless disregard necessarily constitutes malice or bad faith in cases where the tort does not itself require malice, bad faith, or some element that necessarily excludes good faith. *Gowens* then upheld entity liability where a government employee's reckless driving occurred in the course of an employer-connected emergency response. *Id.* paragraph 22, 364 P.3d at 652.

*Gowens* forecloses the per se analytical move the City wants the Court to make. Plaintiffs do not rely on *Gowens* to say Lloyd's conduct was privileged, proper, or comparable to an emergency response with lights and siren. Plaintiffs rely on *Gowens* for the rule that reckless

7

manner of performance does not automatically equal bad faith or outside-scope conduct. The City points to Lloyd's speed, policy violations, non-emergency status, lack of emergency equipment, and the jury's reckless/callous-indifference finding. Those facts matter. They supported negligence, deliberate indifference, and moral blame. They did not compel the legal conclusion that Lloyd was acting outside GTCA scope as a matter of law.

*Shephard v. CompSource Oklahoma*, 2009 OK 25, paragraph 18, 209 P.3d 288, 293, makes the same point in different words: good faith and poor judgment are not mutually exclusive. *Baker ex rel. Baker v. Saint Francis Hospital*, 2005 OK 36, paragraphs 17-19, 126 P.3d 602, 607-08, likewise focuses the scope inquiry on whether the employee stepped aside from employment to serve personal needs, motivations, or purposes, and holds that even intentional wrongful conduct may present a jury question when tied to a misguided attempt to perform employer-related work. And *Bosh v. Cherokee County Building Authority*, 2013 OK 9, paragraphs 10-16, 305 P.3d 994, 998-1000, confirms that respondeat superior can cover serious misconduct committed within scope unless the employee acted in bad faith, maliciously, or outside the assigned work.

The City's requested formulation would have encouraged the jury to collapse "how Lloyd drove" into "why Lloyd was driving." OUJI-CIV No. 6.7 properly kept the focus where Oklahoma law places it: on assigned work, work connection, employer purpose, customary acts, and mistaken or unwise attempts to perform employer business.

## V. THE EVIDENCE SUPPORTED THE JURY'S SCOPE FINDING

The City cannot obtain JMOL because the evidence did not point only one way. The jury heard stipulated facts supporting the City's position: Lloyd was off shift, driving his

personal vehicle, not using emergency equipment, not responding to a 911 emergency, and subject to Policy 308's requirement that officers responding to non-emergency calls obey traffic laws. Court's Jury Instructions [Doc. 251] at 8-9. Plaintiffs do not dispute that evidence. It is why the verdict exists.

But the jury also heard stipulated facts supporting Plaintiffs' position. Lloyd was a sworn Moore police officer. Id. at 7. He responded to an intra-department request to deliver patrol-car keys to a City-sponsored community-outreach event. Id. at 7-8. He possessed those keys solely by virtue of his Moore Police Department employment. Id. at 8. He believed prompt delivery was necessary to avoid possible discipline and prevent interruption of the Department's public-outreach event. Id. Those facts permitted a reasonable jury to find that Lloyd was pursuing a City purpose and attempting to perform employer-connected police business when he drove.

The same employer-purpose evidence appeared throughout the case. The Court's Order on Motions for Summary Judgment recited that Officer Wagner was participating in the City's annual Shop With A Cop event, locked the keys in the police car he was using, and asked Lloyd to bring a spare key and hurry. Order on Motions for Summary Judgment [Doc. 146] at 2. The Court further observed that Shop With A Cop was organized and sanctioned by MPD, that Lloyd reaffirmed his belief he was acting within the course and scope of employment, and that he was responding to Wagner's need for the spare key to Lloyd's MPD-issued patrol vehicle. Id. at 26-27. At summary judgment, the Court held a jury could reasonably conclude Lloyd was acting within scope. Id. That same evidence was presented at

9

trial, and the City has not shown that the wording of Instruction No. 22 deprived the jury of the legal framework it needed to rely on that evidence and find scope of employment.

Defendants' Exhibit DC15 further supports that same inference. In a December 4, 2019 email titled "Vehicles for Shop with a Cop," Lt. Dudley wrote that he was trying to provide an SUV patrol car for every officer, had asked listed officers to loan vehicles for the morning of the event, and would get spare keys ahead of time so event officers would not have to take the assigned officers' keys. The list paired Lloyd's patrol unit, "16-260 Lloyd," with Wagner. Defendants' Exhibit DC15, COM_002228-29; Minute Entry-Trial Began [Doc. 248] at 1. The email confirms that Lloyd's key delivery was not an after-the-fact private errand. It was part of the City's planned Shop with a Cop logistics for patrol vehicles and spare keys.

The trial evidence made the same point more starkly. As the Court will recall, bodycam evidence played at trial showed Lloyd, after the wreck, still trying to get the keys to Shop With A Cop. At the scene, he asked an Oklahoma City officer to get the keys to Shop With A Cop. Later, at the hospital, he asked another Oklahoma City officer to bring the keys to the event. The Court received and viewed this evidence at trial; Plaintiffs cite it here as trial evidence considered by the jury, not as a new record submission. That evidence is unfavorable to Lloyd personally, but it is probative of continued employer-serving purpose. It directly rebuts the City's no-good-faith/no-scope theory because it shows that Lloyd's stated objective remained completion of the City-related key mission. The City has manner evidence; it does not have compelled no-good-faith purpose evidence.

On this record, a reasonable jury could find that Lloyd acted mistakenly, unwisely, recklessly, or even with deliberate indifference while still attempting to perform employer-

connected police business. Instruction No. 22 allowed the jury to resolve that distinction. Rule 50 does not permit the City to replace that factual resolution with its preferred inference.

## VI. THE VERDICTS ARE RECONCILABLE

The City's inconsistency argument fails for the same reason. Federal law requires courts to reconcile jury findings if any plausible theory supports them. *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1143-44 (10th Cir. 2005). A verdict is irreconcilably inconsistent only when the essential findings are logically incompatible.

The City bears the burden to show the answers are logically impossible, not merely in tension. These findings are not incompatible. The jury found negligence against Lloyd. Jury Verdict [Doc. 252] at 1. It apportioned 100% fault to Lloyd. Id. at 2. It found Lloyd was acting within the scope of his employment with the City at the time of the crash. Id. at 3. It separately found for the Estate on the Section 1983 claim against Lloyd. Id. at 4. It separately found that Lloyd acted with reckless and callous indifference to Emily Gaines's constitutional rights. Id. at 6. And then it awarded no punitive damages. Id. at 7; Minute Order-Trial Completed [Doc. 250] at 1.

Those answers can coexist. The scope answer addressed whether Lloyd's trip and conduct were sufficiently connected to Moore's police business under Oklahoma scope law. The Section 1983 answers addressed whether Lloyd's manner of driving was deliberately indifferent enough to shock the conscience and violate Emily's federal constitutional rights. That federal standard matters. This was not a high-speed-pursuit case requiring specific intent to harm. Under *Browder*, where deliberation is practical, reckless or deliberate indifference can satisfy the conscience-shocking element. *Browder ex rel. Estate of Browder v. City of Albuquerque*,

787 F.3d 1076, 1080-82 (10th Cir. 2015); Court's Jury Instructions [Doc. 251] at 35-36. So the federal answer and the City's no-scope theory both point to Lloyd's reckless disregard, but they answer different legal questions. Federal law allowed the jury to treat that reckless disregard as constitutionally culpable because Lloyd had time to deliberate. Oklahoma scope law, under *Gowens*, did not require the jury to treat the same reckless disregard as automatic bad faith or outside-scope conduct so long as the jury could find Lloyd was driving for the City's benefit and incident to his employment. The punitive answer shows the jury did not simply punish Lloyd for bad conduct. It found serious federal culpability, but declined to award punitive damages.

The City says the jury's reckless/callous-indifference finding necessarily means no good faith. *Gowens* forecloses that automatic conversion. *Lampkin v. Little*, 286 F.3d 1206, 1213-14 (10th Cir. 2002), does not compel a different result. *Lampkin* recognizes that good faith matters to GTCA scope, but it does not hold that a federal constitutional culpability finding automatically decides Oklahoma scope. The City's motion collapses distinct questions: federal constitutional culpability, Oklahoma good-faith/scope, and punitive damages. The verdict form kept them separate. The law permits that separation.

## VII. ANY ALLEGED INSTRUCTIONAL IMPERFECTION WAS HARMLESS

Even if the Court assumes, for prejudice analysis only, that adding the statutory words "good faith" would have been preferable, the City still cannot show that the result probably would have changed. The jury already decided the substance of the good-faith/scope issue under OUJI-CIV No. 6.7. It decided whether Lloyd was engaged in assigned work, doing what was proper/usual/necessary to accomplish assigned work, doing work customary to the

12

employer's business, acting with a view to furthering the employer's business, or acting from an impulse or emotion naturally related to an attempt to perform employer business. Court's Jury Instructions [Doc. 251] at 31.

The omitted phrase would have given the City a label for the same argument it already derived from Lloyd's speed, policy violations, non-emergency status, and lack of emergency equipment. It would not have erased the stipulated employer-purpose facts. It would not have erased the admitted key-delivery mission. It would not have erased the City's own pre-event vehicle/spare-key planning reflected in Defendants' Exhibit DC15. It would not have erased Lloyd's post-crash and hospital focus on getting the keys to the event. And it would not have converted reckless performance of a City-related task into a purely personal frolic as a matter of law.

The instructions as a whole told the jury that the City could be liable only for acts within scope. Id. at 28-31. The verdict form required a direct scope finding. Jury Verdict [Doc. 252] at 3. The City argued its theory. The jury rejected it. The City has not shown that a different wording would probably have produced a different result.

## VIII. CONCLUSION

The City has not shown entitlement to judgment as a matter of law or a new trial. The Court used the Oklahoma Supreme Court-approved scope instruction. That instruction was adopted with a Comment citing *Nail*, a GTCA police-scope case that quotes the statutory good-faith definition and then applies the same scope factors the jury received. Oklahoma law does not adopt the City's per se rule that reckless, callously indifferent, or even constitutionally culpable conduct automatically defeats GTCA scope. And the evidence permitted a reasonable

13

jury to find that Lloyd was performing, or attempting to perform, employer-connected police business when he caused the crash.

The City's JMOL/New-Trial Motion [Doc. 260] should be denied.

Respectfully submitted,

**LAIRD HAMMONS LAIRD, PLLC**
/s/ Jason Hicks
Chris Hammons, OBA #20233
Jason M. Hicks, OBA #22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone: (405) 703-4567
Facsimile: (405) 703-4061
E-mail: chris@lhllaw.com
jason@lhllaw.com
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

/s/ Jason Hicks
**JASON HICKS**

14